Whitakee, Judge,
delivered the opinion of the court;
Plaintiff operates a beauty salon and a school of beauty culture. Prior to the enactment of the Servicemen’s Eead-justment Act of 1944 all of plaintiff’s students were women, but after the enactment of that act a large number of men enrolled in the school. A part of the course of instruction was actual work done on customers. During the period in question the school, alleging that it did not have sufficient customers to give the trainees the required practical training, represented to the Veterans’ Administration that it would be necessary for it to employ models for this purpose, which, it says, the Veterans’ Administration agreed to. It claims it did employ models and it sues for the fees allegedly paid them.
Defendant has filed a counter claim alleging that the vouchers submitted by the plaintiff for these model fees were fraudulent, and it asks judgment against plaintiff in the sum of $2,000 for each of the four false claims submitted and, in addition, for double the amount of damages which *300 it alleges the United States has sustained by reason of the presentation of the fraudulent claims.
The male veterans enrolled in plaintiff’s school were partly disabled veterans, who were enrolled under Public Law 16, being the Act of March 24, 1943 (57 Stat. 43), and partly able-bodied veterans, who were enrolled under Public Law 346, which is the Servicemen’s Readjustment Act of 1944 (58 Stat. 284,287). Public Law 16 authorized the Veterans’ Administration to enter into contracts with schools for the instruction of disabled veterans. These contracts were required to be in writing. Public Law 346 also authorized the Veterans’ Administration to enter into contracts with schools for the instruction of veterans who were not disabled, but these contracts were not required to be in writing. The great majority of the veterans enrolled in plaintiff’s school were enrolled under Public Law 346.
The regulations of the Veterans’ Administration, section 36.207 (10 F. R. 2618; 38 C. F. R. 1945 Supp.), provided for the payment to the school for the instruction of veterans of the same tuition and fees, and for the same books, supplies and equipment “as are generally required for the successful pursuit and completion of the course by other students in the institution.” Subparagraph (a) (1) of this section, under the heading of “Charges for tuition, laboratory, library, health, infirmary and other similar fees,” stated that the Administrator had determined that the following charges were fair and reasonable:
The charges for tuition, laboratory, library, health, infirmary and other similar fees customarily made and in effect prior to June 22,1944, or as may be established after said date if applicable to all classes of students at the approved institution * * * Provided, That the proper official certifies to the manager of the regional office the charges customarily made to any student pursuing the particular course. [Italics ours.]
A similar provision is incorporated in subparagraph (2), that is to say, a provision that the charges to veterans shall be the same as the charges to other students.
Under subparagraph (b) of the section, provision is made for the payment of charges for books, supplies, equipment *301 and other necessary expenses, but before payment, it is required that the institution shall certify to the manager “the actual cost of such books, supplies, equipment and other expenses.”
The Commissioner’s report shows that the officials of the school contacted the Veterans’ Administration seeking authority to pay models to be used in the instruction of the students at the rate of fifty cents an hour, and the Veterans’ Administration agreed to such an amendment of its contract with the school for the instruction- of disabled veterans, but it agreed to pay “only for the actual amount of model fees incurred.”
No agreement was made for the payment of model fees by veterans enrolled under Public Law 346, but plaintiff says that it understood that the rule applicable to students enrolled under Public Law 16 would also be applicable to students enrolled under Public Law 346. This was a logical assumption.
However, the Commissioner’s findings of fact show that no models were ever paid anything, and his report is fully supported by the evidence.
What the school did was to charge its customers a smaller amount, if the work done for them was done by students, than when it was done by trained employees. Naturally the charges made for services performed by students would be less than the charges made by trained employees. The fact that they were less is by no means proof of the fact that the customers were paid anything for permitting the students to work on them. Instead of the school paying them anything, they paid the school for the services of the students. The fees received by the school from customers for work done by students were quite a substantial part of the income of the school. Its income from such sources was as follows:
1945-$15,106.31
1946- 19,847.75
1947- 21,546.12
1948- 22, 503. 00
It is, therefore, clear that the Veterans’ Administration was not obligated to pay the school anything for furnishing models, because the school did not pay anything for models.
*302 Furthermore, the certificate the school was required to furnish in order to secure payment, read:
This is to certify that models will be furnished to all male students of the E. Burnham School of Beauty Culture on the same basis as to Veterans and that such students will be charged for the actual amount of model fees incurred at the rate of $.50 per hour * * *. [Italics ours.]
The regulations of the Veterans’ Administration, issued pursuant to Public Law 346, from which we quoted above, show that no fees were to be paid the school for the training of veterans unless the same fees were charged non-veteran students. The Commissioner’s findings show, and they are amply supported by the record, that no non-veteran students, with two possible exceptions, were ever charged model fees.
Plaintiff’s records do indicate that two non-veteran students were charged model fees, but these entries are suspect. A ledger card was kept for each student. The card for a student by the name of Bednarek shows that this student was charged on July 21,19J7 with model fees, and this student was given a receipt for the payment of model fees, but this receipt is dated July 11, 19JJ7, which was ten days earlier than the charge made against the student. The entries on these ledger cards were made in typewriting, but in the case of a student by the name of Weselsky there was an inked notation on his ledger card of a charge for model fees, dated June 30,1947, and a payment thereof on July 15,1947.
No such fees were paid by other non-veterans, nor were they charged such fees.
We are convinced that plaintiff is not entitled to recover these model fees, not only because the school did not pay the models anything, but also because non-veterans were not charged such fees, which was required as a condition precedent to the charging of such fees to veterans.

Defendant's eownterelaim

Plaintiff submitted four vouchers to the Veterans’ Administration requesting payment of model fees in the following amounts: $5,387.50; $2,772; $1,377; and $1,530. Each *303 voucher contained this certificate, signed by the president of the plaintiff corporation:
I hereby certify that charges for tuition and fee owe not in excess of charges customarily made to any student ■pursuing the particular course, that the cost of books, supplies, equipment and other expenses for each veteran is the actual cost of such items * * *. [Italics ours.]
These certificates were false.
Section 2514 of 28 U. S. C. (1952 ed.) provides:
A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.
In such cases the Court of Claims shall specifically find such fraud or attempt and render judgment of forfeiture.
However, since we have held that plaintiff is not entitled to recover, it seems unnecessary to render a judgment of forfeiture.
Defendant has abandoned its claim for $2,000 for each false voucher, since it admits that this claim is barred by the statute of limitations.
Plaintiff’s petition is dismissed.
Laramore, Judge; MaddeN, Judge; Littleton, Judge; and JoNEs, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:
1. For many years prior to June 1, 1946, and at all times material herein, the plaintiff has been a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 140 North State Street, Chicago, Illinois. The plaintiff’s business is, and has been, the operation of a school of beauty culture and a beauty salon. •
2. Since January 1946, Gerald Burnham has been actively engaged as the president and principal officer of the plaintiff corporation.
*304 3. Prior to the enactment of the Servicemen’s Readjustment Act of 1944, Public Law 346, 78th Congress, 58 Stat. 284, 287, 38 U. S. C., Chapter 12, Part VIII, all of the plaintiff’s students were women.
4. Beginning about August 1944, the plaintiff enrolled eligible veteran students for training pursuant to the terms of such Act. Both male and female veterans were so enrolled thereafter.
5. By early 1945, the plaintiff also enrolled veteran students who were eligible under the terms of the Act of March 24, 1943, Public Law 16, 78th Congress, 57 Stat. 43, 38 U. S. C., Chapter 12, Part VII. Hereafter the Servicemen’s Readjustment Act of 1944 will be referred to as Public Law 346, and the Act of March 24,1943 will be referred to as Public Law 16. Both laws relate to the education and rehabilitation of veterans of World War II. Public Law 16 differed from Public Law 346 in that the former related primarily to veterans who had incurred physical disability. Institutions training veterans under Public Law 16 were required to enter into a written contract with the defendant, acting through the Veterans’ Administration, whereas generally under Public Law 346 no such written contract was required.
6. This suit is brought to recover an amount to which the plaintiff says it is entitled for “model fees” for subjects it furnished to male Public Law 346 veterans for their practical training in hairdressing during the period from June 1, 1946, to the latter part of August 1947. No amount is claimed herein in connection with the training of any Public Law 16 veterans or any of the women veterans who were students of the beauty culture course at the plaintiff’s institution.
7. At various times and pursuant to the authority of Public Law 346, the Administrator of the Veterans’ Administration issued regulations for the carrying into effect of said law. On March 7, 1945, the Administrator issued the following regulation in respect to the payment to institutions of charges for the training of Public Law 346 students, which regulation was in effect at all times material herein (10 F. R. 2618; 38 C. F. R., 1945 Supplement, 36.207):
*305 § 36.207. Authority of manager to fay institutions. When a veteran entitled to the benefits provided under § 35.018 of this chapter, elects his course of training and chooses the approved educational or training institution where he wishes to pursue his course of training and is accepted by and enrolled in a full-time or a part-time course in such approved institution, the manager of the regional office is authorized to pay to such institution for the veteran’s tuition, laboratory, library, health, infirmary and other similar fees, and for books, supplies, equipment and other necessary expenses, exclusive of board, lodging, other living expenses and travel, as are generally required for the successful pursuit and completion of the course by other students in the institution:
(a) Charges for tuition, laboratory, library, health, infirmary and other similar fees. Pursuant to the authority contained in the Servicemen’s Readjustment Act of 1944, the Administrator hereby determines that the charges established in accordance with, and pursuant to the limitations of, the following provisions are fair and reasonable for the purpose of enabling the institutions to give the services required by said act and are within the intent and authority of paragraph 5, section 400 (b) Title II, of said act.
(1) The charges for tuition, laboratory, library, health, infirmary and other similar fees customarily made and in effect prior to June 22,1944, or as may be established after said date if applicable to all classes of students at the approved institution for any student who pursues the particular course of training, except that the charge for the tuition fee of a full-time veteran trainee shall be not less than $15.00 per month ($45.00 per quarter or $60.00 per semester), said rates shall be effective, as to those heretofore enrolled, from the beginning of the first term beginning after the effective date or §§ 36.207 to 36.209, inclusive, and as to those hereafter enrolled, from the date of enrollment: Provided', That the proper official certifies to the manager of the regional office the charges customarily made to any student pursuing the particular course.
(2) In the case of State and municipal schools, colleges, or universities, and other approved institutions which have nonresident tuition fees, the charges for such tuition, laboratory, library, health, infirmary and other similar fees which were in effect prior to June 22,1944, or as may be established after said date if applicable to all classes of students are determined as the customary *306 charges for all veteran trainees except that the charge for the tuition fee of a full-time veteran trainee shall be not less than $15.00 per month ($45.00 per quarter or $60.00 per semester) : Provided, That the charges are not in conflict with existing laws or other legal requirements. Under this provision a school may not charge to a resident veteran such part of a nonresident tuition fee as will result in a charge in excess of $500 for an ordinary school year.
(3) Arrangements pursuant to subparagraphs (1) and (2) do not require a formal contract with institutions and payments will be made at the end of each term, semester, or quarter prorated in the cases of veteran trainees who withdraw during the term on the same basis as for nonveteran students.
(4) If the instructional costs, which are hereby defined as actual costs of teaching personnel and supplies for instruction, are in excess of the tuition charge herein authorized in subparagraphs (1) and (2), the facts may be certified to the Veterans’ Administration and the Administrator may by contract establish the rates to be paid.
(b) Charges for boohs, supplies, equipment and other necessary expenses. The charges for books, supplies, equipment and other necessary expenses customarily incurred for or by any student who pursues the particular course of training shall be estimated and included in the statement required of the institution under the established procedure of the Veterans’ Administration. Payments will be made at the end of each term, semester, or quarter on submission of a voucher by the institution to the manager of the regional office certifying to the actual cost of such books, supplies, equipment and other expenses for each veteran and also certifying that the material has been delivered to the trainee and that the institution has evidence of such delivery and of such expenditures on hand, and available for the inspection of the Veterans’ Administration.
(c) Maximum charges allowable for full-time and part-time instruction. All provisions for payment above stated are subject to the provision of the law that such payments may not be paid in excess' of $500 for an ordinary school year in respect to any person.
8. For some time prior to June 1, 1946, the tuition for a complete beauty culture course at the plaintiff’s school was $205 if paid in cash, or $235 on a payment plan; and subsequent to June 1, 1946, and until December 29, 1947, the tui *307 tion was $235 in cash, or $250 on a payment plan. These tuition charges included all tools and supplies used in the student’s training and were applicable to veterans and non-veterans alike.
9. During the times material herein large numbers of women who were not veterans were enrolled at the plaintiff’s school and they received the same type of instruction given to veterans.
10. A major portion of the training received by the students at plaintiff’s school was practical training in the form of actual beauty culture work, such as hairdressing, performed on customers or “live models.” These customers served as models for the students and in return received various sex-vices at prices appreciably lower than those prevailing in the usual beauty shop. The income l-eceived by the plaintiff’s school from these customers was an important part of the school’s total income.
Prior to the postwar enrollment of veterans at the plaintiff’s school under Public Laws 16 and 346, all of the students were female. These students performed their practical work, for the most part, on customers. On some occasions when customers were not available or when a student desired treatment of some type for herself, one student would use another student as a model.
Prior to June 1, 1946, the students training under Public Laws 16 and 346 also performed their practical work on the heads of customers who paid the school for services received. It appears that the veterans were privileged to and did infrequently bring female friends into the school to use as live models, and that these friends were hot charged for services received.
Although the evidence does not fully explain the shortage which existed, it appears that for a time prior to June 1, 1946, the unusually large number of' students in training at plaintiff’s school caused by the influx of veterans resulted in an inadequate number of customers available for the practical training of the students.
11. About the middle of May 1946, officers of the plaintiff conferred with an official of the Veterans’ Administration and advised him that there was an inadequate number of “live models” available at the school for the training of vet *308 eran-students. The plaintiff’s president proposed that the school be permitted to obtain “live models” and then to charge the students at the rate of 50 cents an hour per student for such services. On the basis of the representations by-plaintiff’s officers, the Veterans’ Administration official stated that such a proposed plan was possible and advised plaintiff’s officers to petition the Veterans’ Administration accordingly for authority to establish the plan in respect to Public Law 16 students. It was understood by the Veterans’ Administration official that the purpose, as intended by plaintiff, of the 50 cents an hour model fee was to compensate the school for expenses the school experienced in supplying models to the veteran-students.
12. On May 17, 1946, the plaintiff wrote the Veterans’ Administration as follows:
As your completed records will no doubt indicate, at present we have an enrollment in our Beauty Culture classes of 111 Male Veterans. Approximately 6 are in training under Public Law #16 and approximately 105 are in training under Public Law # 346.
We are very desirous of giving these Veterans the very best training in Beauty Culture that they can possibly receive. I-Iowever, we have been handicapped by a situation which has arisen concerning models. It has always been the custom of the female students to work on each other when models are not available. Of course this is out of the question in connection with male students. This lack of models does not give the veteran the practise that he needs to quality [sic] him as a good operator and has caused discontent among the male veterans which is not good for the morale in general.
We are therefore petitioning the Veterans Administration to permit us to engage models sufficient to keep these Veterans busy. We are requesting a model fee to be paid by the Veterans Administration in the sum of $90.00 for each veteran covering the training period.
During the first six weeks of training no models are used and therefore no fee is involved. However, the average period beyond this, during which models are required, is 6 months. We are therefore petitioning for the right to include in our billing the sum of $15.00 per month for 6 months.
13. On May 23, 1946, the plaintiff wrote the Veterans’ Administration as follows:
*309 Supplementing our letter dated May 17th, 1946, we will undertake to give each male veteran 180 Model Hours during his course oí training.
We will undertake to pay models supplied to us by the Veterans themselves at the rate of 50 cents per hour.
We propose to bill the Veterans Admin., on any one of the following three arrangements whichever you prefer:
(a) At the rate of $15.00 per month for the first six months of training
(b) At the rate of $20.00 per month for four and one half months commencing after the sixth week
(c) At the rate of $15.00 per month commencing after the sixth week and continuing -until such time as the Veteran has used his 180 model hours.
14. At the time of the plaintiff’s conference and correspondence in the matter of plaintiff’s proposed “live model” system, a contract existed between the Veterans’ Administration and plaintiff covering the period from August 21, 1945, to June 30,1946, for the training of Public Law 16 students, being contract No. VA28r vr-283.
On June 1, 1946, the Veterans’ Administration wrote plaintiff a letter enclosing a sample supplement to the existing contract for the purpose of the preparation of a modification to it pursuant to plaintiff’s planned “live model” system for the remaining month of the contract. On June 6, 1946, the plaintiff mailed to the Veterans’ Administration six copies of a proposed contract supplement to cover the period June 1, 1946, to June 30, 1946. The Veterans’ Administration by letter dated June 22,1946, notified plaintiff that its proposed supplement had been approved.
The pertinent provisions of the supplement to contract VA28r vr-283 was contained in the second article thereof as follows:
In addition to other charges as prorated in the original contract, there shall be a fee of $15.00 a month for the use of models for male students. This charge will be made for the use of models in the six-month, 1,000-hour, course in Beauty Culture.
The average number of hours a model will be made available to a male student will be as follows: First six weeks of the course a model will not be furnished. Each month thereafter, not exceeding six months, a model will *310 be furnished for an average of not less than 30 hours per month.
In the event that a student does not have the services of a model for the full 30 hours per month, the chargee will be prorated. One month will be defined as 30 days.
15. On October 17, 1946, the Veterans’ Administration wrote to plaintiff enclosing a sample proposal or contract form for the purpose of the preparation of a new contract to cover the period from July 1,1946, to June 30, 1947. On October 31,1946, the plaintiff mailed to the Veterans’ Administration six copies of the proposed contract, duly executed, and on November 21, 1946, the Veterans’ Administration advised plaintiff that the contract had been duly approved, being contract VA28r vr-484.
The pertinent provision of said contract is set forth on page la thereof as follows:
Models will be furnished to the veteran male student after he has completed 250 hours of the course. Such models will be paid at the rate of $.50 per hour and the Veterans’ Administration will pay only for the actual amount of model fees incurred but not to exceed a total of $90.00 for the entire course.
This contract applied to students training under Public Law 16 and had no application to students training under Public Law 346.
16. From June 1, 1946, to sometime in August 1947, the plaintiff charged veterans enrolled at its school under Public Law 346 the same fees for “live models” as specified in the contracts which plaintiff had with the Veterans’ Administration in respect to Public Law 18 students. The plaintiff filed vouchers with the Veterans’ Administration for payment of the charges for said period and did receive payment in part. However, subsequent to the decision of the Veterans’ Administration in August 1947 that such model fees as claimed were not properly reimbursable, the Veterans’ Administration discontinued making payments on plaintiff’s vouchers and withheld other sums due plaintiff in order to offset the sums already paid on the vouchers.
17. Subsequent to June 1,1946, the plaintiff attracted “live models” to its school for use by the students, veterans, and nonveterans alike, in their practical training, by the method *311 of charging such models for beauty culture treatments received at the hands of the students at price rates which were substantially below prevailing prices in the standard beauty salon. This was the same method the school had used for many years previous. The “live models” were customers of plaintiff’s school, and all paid the plaintiff for services performed. All students, female, nonveterans, and veterans under Public Laws 16 and 346, performed most of their practical work on these customers. There were éxceptions in that female students sometimes used other female students as models, and some male students sometimes brought into the school female friends who served as the particular student’s model.
During a relatively short period, from the first of June 1946 to the end of that month or shortly afterward, the plaintiff experimented in another method for the attracting of “live models” to the school. The method consisted of crediting each customer for the number of hours she sat as a model for a student and then awarding her a free service of some nature in return. However, that method was tried and discarded in very brief order.
18.Although the number of female nonveteran students decreased during the years 1945-1948 the income to the school for the services performed by all students increased. The income from such sources is shown below:
1945-1_$15,106.31
1946- 19,847.75
1947_ 21, 546.12
1948- 22,503.00
19. There is no evidence concerning the cost, if any, of attracting such customer-models to the school except that an occasional short advertisement was placed in the local newspapers.
20. On October 17,1946, the Chief, Vocational Kehabilitation and Education Division of the Veterans’ Administration, Chicago, sent to the plaintiff the forms for a proposal covering the period July 1,1946, to June 30,1947. The letter (referred to in finding 15) reads in part as follows:
Kindly prepare six copies of the proposal and return all copies to this office for approval. Since your insti *312 tution is a corporation, execute the certificate on the last page of each copy as of a date not later than June 29, 1946. Following approval of your contract, one copy of the proposal will be returned for your file.
21. On October 31,1946, the plaintiff returned copies of the executed contract for the above period to the defendant together with the following enclosure:
This is to certify that models will be furnished to all male students of the E. Burnham School of Beauty Culture on the same basis as to Veterans and that such students will be charged for the actual amount of model fees incurred at the rate of $.50 per hour, but not to exceed a total of $90.00 for the entire course.
22. At no time prior to June 1, 1946, did the plaintiff charge any student model fees, and from that date until sometime in May 1947, only students training under Public Laws 16 and 346 were charged model fees. During that period there were 10 male students at plaintiff’s school who were not enrolled under Public Laws 16 or 346, and none of these students was charged model fees during the said period. At no time were female students (whether veteran or not) charged model fees.
23. Plaintiff’s school maintained for each student a record known as a ledger card containing certain data in respect to the individual student including the notation of charges assessed against and paid by the student. The ledger cards covering the 10 male nonveteran students enrolled at plaintiff’s school during the period June 1, 1946, to August 1947 contained the following chronological information respecting each one:

*313 In the case of Bednarek, the ledger card indicates that model charges against that student were recorded on July 21, 1947, whereas a receipt for past payment of model fees, acknowledged by student Bednarek, is dated July 11,1947, some 10 days earlier. In the case of student Weselsky, inked notations on the ledger card indicate model fees were listed June 30,1947, as due, and were listed as paid July 15,1947. The remaining ledger cards contain no record of model fees having been charged the remaining nonveteran male students, except as to Ulrich, and that record is unsatisfactory as proof of the payment of model fees.
24. Starting in May 1947 the Veterans’ Administration conducted an investigation into the training of veterans at plaintiff’s school and the assessment of charges therefor. Prior to then, no nonveteran male student at plaintiff’s school had been charged model fees. In August 1947 the Veterans’ Administration determined that model fees as assessed against the veteran-students were not reimbursable and so advised the plaintiff.
25. On or about February 17,1947, the plaintiff submitted a public voucher dated February 17, 1947, to the Veterans’ Administration requesting payment of the sum of $5,387.50 for services by said plaintiff in the form of model services supplied by it to the Public Law 346 veterans enrolled at plaintiff’s school during the period from June 1, 1946, to January 2,1947. Said voucher contained a certificate signed by the then vice president of the plaintiff corporation, which reads as follows:
I hereby certify that charges for tuition and fee are not in excess of charges customarily made to any student pursuing the particular course, that the cost of books, supplies, equipment and other expenses for each veteran is the actual cost of such items, that the materials have been delivered to the trainee and that the institution has evidence of such delivery and of such expenditures on hand and available for the inspection.of the Veterans Administration. Public 346. This certifies that no amount received from the Government is used, or will be used as a prize, rebate or other payment in goods or money to the Veteran-Trainee.
*314 On or about April 30, 1947, the plaintiff submitted to the Veterans’ Administration a public voucher dated April 30, 1947, requesting payment of $2,772 for services similar to those alleged in the earlier voucher but for different students and covering the period June 1, 1946, to March 29, 1947. Subsequently, similar vouchers were filed on or about August 27, 1947, and October 28, 1947, for the sums of $1,377 and $1,530, respectively, and for services allegedly supplied at various times from September 1946 to sometime in August 1947. Each voucher contained a certificate identical to that quoted above.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and its petition is therefore dismissed.